In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00198-CR

                                                ______________________________

 

 

                               SAMUEL COY HAAGENSEN,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                         On Appeal from the 6th Judicial District Court

                                                             Lamar County, Texas

                                                            Trial
Court No. 23608

 

                                                            
                                      

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                                        Opinion by Justice Moseley

                                                 Dissenting Opinion
by Justice Carter

 

 








                                                                   O P I N I O N

 

            Samuel
Coy Haagensen appeals his conviction by a jury for delivery of less than one
gram of methamphetamine.  See Tex.
Health & Safety Code Ann. §§ 481.102, 481.112 (Vernon 2010).  After obtaining a search warrant for
Haagensen’s residence, Officer Leigh Foreman was contacted by a confidential
informant who advised he could make a methamphetamine purchase from
Haagensen.  Based on this offer, the
police officers decided to wait before executing the search warrant.  Prior to the purchase, Foreman searched the
confidential informant and provided him with money to make the purchase.  The confidential informant purchased
methamphetamine from Haagensen and an audio recording of the purchase was
made.  Later that evening, police
officers stopped a vehicle being driven by Haagensen and arrested him.  Although no incriminating evidence was found
on Haagensen’s person, the money provided to the confidential informant was
found in a jacket on which Haagensen had been sitting.  The police eventually executed a search
warrant for Haagensen’s residence and discovered scales, baggies, and a spoon
with white residue in his bedroom.[1]  

            The
State charged Haagensen with delivery of methamphetamine based on the purchase
by the confidential informant.  The State
alleged the transaction occurred in a drug-free zone because it occurred within
1,000 feet of a day-care center.  See Tex.
Health & Safety Code Ann. § 481.134 (Vernon 2010).  The State further alleged that Haagensen had
been previously convicted of the felony offense of violation of a protective
order.  See Tex. Penal Code Ann.
§ 12.42 (Vernon 2011).  Haagensen
pled not guilty to the charged offense, not true to the drug-free zone, and
true to the prior felony conviction.  The
jury found both enhancements to be true and assessed punishment at fifteen
years’ imprisonment.  

            Haagensen
raises five issues on appeal.  Haagensen
argues the evidence is insufficient to support the jury’s finding that the
transaction occurred in a drug-free zone. 
In addition, Haagensen claims he received ineffective assistance of
counsel and the jury’s verdict is defective because it contained the wrong
cause number.

The Evidence Is Sufficient to Support the Drug-Free Zone Enhancement

            In
his first and second issues, Haagensen argues that the evidence is insufficient[2]
to support the jury’s finding that the delivery occurred in a drug-free
zone.  The State alleged the offense
occurred within a drug-free zone (i.e., within 1,000 feet of Little Ark
Learning Center).  Haagensen argues the
evidence is insufficient on two bases:  (1)
the State failed to prove that the facility was licensed, certified, or
registered; and (2) the State failed to prove that the offense was committed
within 1,000 feet of the day-care center.

            In
evaluating sufficiency of the evidence, we review all the evidence in the light
most favorable to the verdict to determine whether any rational jury could have
found the essential elements of the drug-free-zone enhancement beyond a
reasonable doubt.  Brooks, 323 S.W.3d at 912 (citing Jackson, 443 U.S. at 319). 
Our rigorous legal sufficiency review focuses on the quality of the
evidence presented.  Id. at 917 (Cochran, J., concurring).  We examine legal sufficiency under the
direction of the Brooks opinion,
while giving deference to the responsibility of the jury “to fairly resolve
conflicts in testimony, to weigh the evidence, and to draw reasonable
inferences from basic facts to ultimate facts.” 
Hooper v. State, 214 S.W.3d 9,
13 (Tex. Crim. App. 2007) (citing Jackson,
443 U.S. at 318–19).

            Legal
sufficiency of the evidence is measured by the elements of the enhancement as
defined by a hypothetically-correct jury charge.  Young v.
State, 14 S.W.3d 748, 750 (Tex. Crim. App. 2000) (Malik applies to drug-free-zone enhancements); Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).  A “hypothetically correct” jury charge is
“one that accurately sets out the law, is authorized by the indictment, does
not unnecessarily increase the State’s burden of proof or unnecessarily
restrict the State’s theories of liability, and adequately describes the
particular offense for which the defendant was tried.”  Malik,
953 S.W.2d at 240.  The “hypothetically
correct” jury charge cannot “wholly re-write the indictment,” but is not
required to “track exactly all of the allegations in the indictment.”  Gollihar
v. State, 46 S.W.3d 243, 253 (Tex. Crim. App. 2001).  “[I]f the penal offense sets out various
statutory alternatives for the distinct elements of the crime, the jury charge
may contain only those alternative elements that are actually alleged in the
indictment.”  Cada v. State, 334 S.W.3d 766, 773 (Tex. Crim. App. 2011).  Stated succinctly, the hypothetically-correct
jury charge must include allegations that are statutory alternatives for an
element of the offense and material variances. 
See id.  

            The
State alleged “the above alleged offense was committed in, on, or within 1000
feet of a school, to-wit:  Little Ark
Preschool . . . .”[3]  Section 481.134 provides:

            (d)       An offense otherwise punishable under
Section 481.112(b) . . . is a felony of the third degree if it is shown on the
trial of the offense that the offense was committed:  

                        (1)        in,
on, or within 1,000 feet of any real property that is owned, rented, or leased
to a school . . . .

 

Tex.
Health & Safety Code Ann. § 481.134(d).  Section 481.134 also defines “School” as a
day-care center “as defined by Section 42.002, Human Resources Code.”  Tex.
Health & Safety Code Ann. § 481.134(a)(5).  Section 42.002 defines “Day-care center” as
“a child-care facility that provides care for more than 12 children”  and defines “Child-care facility” as “a
facility licensed, certified, or registered by the department . . . .”  Tex.
Hum. Res. Code Ann. § 42.002 (Vernon Supp. 2010).  Operation of a day-care facility without a
license issued by the State is prohibited; violation of this prohibition
subjects the violator to civil penalties.  Tex.
Hum. Res. Code Ann. §§ 42.041(a), 42.075 (Vernon Supp. 2010).  

            The
question in this case is whether the definition of a “day-care center” is an
element of the offense.  Not all
definitions constitute elements of an offense. 
In Gray v. State, the Texas
Court of Criminal Appeals held that the definition of intoxicant is not an
element of the offense of driving while intoxicated.  152 S.W.3d 125, 132 (Tex. Crim. App.
2004).  The court reasoned the intoxicant
did not describe the forbidden conduct, the required culpability, any required
result, or the negation of an exception. 
Id.  

            A
definition, though, can be an element of the offense.  In Curry,
the Texas Court of Criminal Appeals held the statutory alternatives contained
in the definition of “abduction” were essential elements of the offense because
the alternatives described the “mens rea” necessary to establish the
offense.  See Curry v. State, 30 S.W.3d 394, 403 (Tex. Crim. App. 2000)
(State bound by the statutory alternative alleged).  In Curry,
the Texas Court of Criminal Appeals distinguished prior cases where the
variance did not describe the forbidden conduct, the required culpability, any
required result, or the negation of an exception.  Id.

            Recently,
the Texas Court of Criminal Appeals has suggested in dictum that the definition
of “owner” is an element of theft.  See Byrd v. State, 336 S.W.3d 242 (Tex.
Crim. App. 2011) (concluding State bound by its allegation because name of
owner was material variance).  This Court
has recognized the statutory definition of “deliver” is an element of delivery
of a controlled substance.  See Stephens v. State, 269 S.W.3d 178,
180 (Tex. App.—Texarkana 2008, pet. ref’d) (concluding hypothetically-correct
jury charge included allegation of constructive delivery); accord Mihnovich v. State, 301 S.W.3d 354, 358 (Tex. App.—Beaumont
2009, pet. ref’d) (concluding hypothetically-correct jury charge included
allegation of constructive delivery).  

            The
Texas Penal Code specifies that forbidden conduct, the required culpability,
any required result, or the negation of an exception form elements of an
offense.  The Texas Penal Code defines an
“Element of offense” as:

(A) the forbidden conduct;

(B) the required culpability;

(C) the required result;
and

(D) the negation of any
exception to the offense.

 

Tex. Penal Code Ann. § 1.07(a)(22)
(Vernon 2011).  The definition of “day-care
center” describes the forbidden conduct because it limits which day-care
centers create a drug-free zone.  Unlike
primary and secondary schools,[4]
not all day-care centers create drug-free zones.  Not all day-care centers, though, create
drug-free zones.  Only “a day-care
center, as defined by Section 42.002, Human Resources Code” creates a drug-free
zone.  Tex.
Health & Safety Code Ann. § 481.134.  If a day-care center does not serve more than
twelve students or if a day-care center is not licensed, certified, or
regulated, the day-care center does not create a drug-free zone.  Thus, in order to prove a drug-free zone
exists, the State must establish the day-care center at issue meets the
statutory definition of “school.”  

            The
State notes Haagensen has not provided any cases which have reversed a
drug-free-zone finding based on the definition of a school.  The State further asserts it has been unable
to find any cases in its own research. 
The State, though, has not provided this Court with any cases—and we have
not discovered any in our own research—that hold the State is not required to
prove a day-care center qualifies as a school under Tex. Hum. Res. Code Ann. § 42.002.  Although it appears this may be an issue of
first impression, the State must prove all the statutory elements of the
enhancement.

            We
conclude the definition of a “day-care center” contained in Tex. Hum. Res. Code Ann. § 42.002
is an essential element of the enhancement. 
Thus, the definition of a “day-care center” must be included in the
hypothetically-correct jury charge.  The
hypothetically-correct jury charge required the State to prove that (1) the
offense charged (2) was committed (3) within 1,000 feet of any real property
that is owned, rented, or leased to (4) a facility (5) that provides care (6) for
more than twelve children and (7) is licensed, certified, or registered by the
department.

            Haagensen
argues the State failed to prove the Little Ark Learning Center is licensed,
certified, or registered.  Officer
Foreman replied in the affirmative when asked, “As you understand the law, [the
day-care center] is a school?”  No objection
was made to this testimony.  Although
Foreman’s testimony is, perhaps, conclusory and is a mixed conclusion of fact
and law, we conclude it is some evidence that could be considered by the jury
and provides legally sufficient evidence of its existence as a
statutorily-defined child-care facility.  In addition to the testimony of Foreman, the
State presented the testimony of Marie Rushing, the child-care director at
Little Ark Learning Center.  Rushing
testified that Little Ark provides its services for more than twelve children
under the age of fourteen for less than twenty-four hours per day.  This description matches most of the statutory
requirements to meet the definition of a child-care center; the only missing
element is that there was no direct testimony that Little Ark was licensed,
certified, or registered by the Texas Department of Human Services.  Absent testimony to the contrary, we will not
assume that the First United Methodist Church was illegally operating the
child-care center and the failure to specifically identify it as being
licensed, certified, or registered was not a sufficiently consequential lapse
to invalidate its characterization as a child-care facility.  We also determine that the jury could infer
from the evidence provided by Rushing and Foreman that this was a child-care
facility as defined in the statute.  When
reviewing the sufficiency of the evidence, we must evaluate all of the evidence
in the record, both direct and circumstantial, whether admissible or
inadmissible.  Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999); see Neal v. State, 256 S.W.3d 264, 277
(Tex. Crim. App. 2008).  Further, Officer
Foreman testified he based his measurements on a map he obtained at city hall
from the city engineer.[5]  We conclude, based on Foreman’s testimony,
that a rational person could have found that the day-care center was licensed,
certified, or registered.

            In
the alternative, Haagensen argues the State failed to prove the offense
occurred within 1,000 feet of the day-care center.  Haagensen argues the record only establishes
the offense occurred in the yard of some unidentified house on East Price
Street.  Foreman testified the
transaction occurred in the yard of the house to the east of the third house on
East Price Street.  Foreman estimated the
location was approximately 950 feet from the property line of the day-care
center’s parking lot and testified it was “well within” the 1,000-foot circle
of the day-care center.[6]  Officer Foreman testified he based his
measurements from the parking lot of the day-care center.  Haagensen argues this parking lot actually
belongs to a neighboring church and is not leased to, owned, or rented by the
day care.  Haagensen has not directed
this Court to where the record establishes the parking lot belongs to the
neighboring church.  Further, a rational
juror could have concluded the parking lot belonged to the day-care
center.  Foreman testified “the parking area
for Little Ark goes past the third house -- the house just east of the house he
was parked in front of.”  The jury could
reasonably make the deduction that the parking lot was owned, rented, or leased
to the day-care center.  We note that
Rushing testified she was “employed by First United Methodist Church, Little
Ark Learning Center . . . .”  Thus, the
jury could have alternatively deduced, from Rushing’s testimony and Foreman’s
testimony, that the day-care center is owned by the neighboring church and the
parking lot of the neighboring church is also the parking lot of the day-care
center.  We conclude a rational juror
could have concluded, beyond a reasonable doubt, that the offense occurred in a
drug-free zone.  The evidence is sufficient.

The Record Does Not Establish Haagensen
Received Ineffective Assistance of Counsel

            Haagensen, in his third and fourth
issues, claims he received ineffective assistance of counsel in violation of
the Fifth, Sixth, and Fourteenth Amendments. 
See U.S. Const. amend V, VI, XIV. 
Haagensen also argues he received ineffective assistance of counsel in
violation of Article I, Sections 10 and 19 of the Texas Constitution.[7]  See
Tex. Const. art. I, §§ 10,
19.  Haagensen argues he received
ineffective assistance of counsel because his trial counsel failed to object to
hearsay and irrelevant evidence used in obtaining the search warrant and
evidence of extraneous bad acts.

            We
evaluate the effectiveness of counsel under the standard enunciated in Strickland v. Washington, 466 U.S. 668 (1984).  See
Hernandez v. State, 726 S.W.2d 53, 56–57 (Tex. Crim. App. 1986).  To prevail on his claim, Haagensen must show
(1) his appointed trial counsel’s performance fell below an objective standard
of reasonableness, and (2) a reasonable probability exists that, but for trial
counsel’s errors, the result would have been different.  See
Strickland, 466 U.S. at 687–88.  “A
reasonable probability is a probability sufficient to undermine confidence in
the outcome.”  Mallett v. State, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001).  An appellant has the burden of proving
ineffective assistance of counsel by a preponderance of the evidence.  Thompson
v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).  “It is well-settled that any claim of
ineffective assistance must be firmly founded in the record.”  Flowers
v. State, 133 S.W.3d 853, 857 (Tex. App.—Beaumont 2004, no pet.); see Thompson, 9 S.W.3d at 813.

            Haagensen
argues his trial counsel was deficient because he failed to object to hearsay
and evidence of extraneous bad acts and unadjudicated offenses.  The State introduced evidence concerning
evidence used to obtain the search warrant; evidence obtained as a result of
the search warrant, including baggies, scales, syringes, pipes, and a spoon
with white residue; testimony concerning Haagensen’s prior arrests; and drug ledgers
which listed names and numbers of persons whom a police officer testified were
associated with narcotics use and drug trafficking.  

            The
question is whether failure to object to these alleged bad acts constitutes
ineffective assistance of counsel.  Extraneous
offenses are inherently prejudicial, and when counsel fails to object to
numerous extraneous and prejudicial matters, counsel may be ineffective.  Brown
v. State, 974 S.W.2d 289, 293 (Tex. App.—San Antonio 1998, pet.
ref’d).  An accused must be tried only
for the offense charged; “[t]he accused may not be tried for a collateral crime
or for being a criminal generally.”  Jackson v. State, 320 S.W.3d 873, 882
(Tex. App.—Texarkana 2010, pet. ref’d). 
While much of the evidence may have been admissible, some of the
evidence was clearly not admissible.  

            We
note that trial counsel may have elected not to object based on trial
strategy.  “The review of defense
counsel’s representation is highly deferential and presumes that counsel’s
actions fell within a wide range of reasonable professional assistance.”  Mallett,
65 S.W.3d at 63.  Much, although not all,
of the evidence complained of would have been within the trial court’s
discretion to admit.  See Vaughn v. State, 931 S.W.2d 564, 566
(Tex. Crim. App. 1996) (appellant must demonstrate that if counsel had objected
on indicated grounds, trial court would have erred in overruling
objection).  We note trial counsel’s
reasons do not appear in the record. 
Trial counsel’s strategy in not objecting may have been an effort to
build rapport with the jury and prevent the jury from concluding he was
attempting to hide information from them. 
Counsel also may have not objected because an objection would have
emphasized the evidence.  “If counsel’s
reasons for his conduct do not appear in the record and there is at least the
possibility that the conduct could have been legitimate trial strategy, we will
defer to counsel’s decisions and deny relief on an ineffective assistance claim
on direct appeal.”  Ortiz v. State, 93 S.W.3d 79, 88–89 (Tex. Crim. App. 2002).  Because trial counsel’s failure to object may
have been based on trial strategy, we are unable to conclude counsel’s actions
fell outside the wide range of reasonable professional assistance.

            Further,
even if trial counsel was deficient for failing to object, Haagensen has not
met the second prong of Strickland.  Haagensen argues he has demonstrated
prejudice because “the jury was inundated with details concerning the process
for obtaining a search warrant” and the jury was informed a judge had found
sufficient evidence to conclude probable cause existed for the issuance of a
search warrant.  Haagensen argues this
was “done under the guise of educating the jury” and “was used to lead the jury
to the conclusion that the judge already knew Appellant was a known drug dealer
and the judge already believed him to be guilty.”  Haagensen claims he was tried for being a
criminal generally and the jury could have concluded the confidential informant
lied.  

            We
disagree there is a reasonable probability that a different result would have
occurred.  Even though there is a
theoretical possibility the jury could have disbelieved the confidential
informant, Haagensen has not demonstrated a reasonable possibility that the jury
would have disbelieved the confidential informant.[8]  The State introduced evidence that the
confidential informant had been searched prior to the transaction, the
confidential informant had methamphetamine in his possession after the
transaction, methamphetamine was found in the car being driven by Haagensen,
and the money provided to the confidential informant had been found in a jacket
on which Haagensen had been sitting.  The
State also introduced an audio recording of the transaction.  The record before us does not demonstrate
that Haagensen’s trial counsel rendered ineffective assistance.

Any Error
Concerning the Cause Number on the Verdict Form Is Not Preserved for Appellate
Review

 

            In
his fifth issue, Haagensen contends his conviction must be reversed because the
jury’s verdict form specified an incorrect cause number.  This case is an appeal from cause number 23608
in the trial court.  The indictment,
court’s charge, and judgment all specify cause number 23608.  The jury’s verdict form, though, specified cause
number 22949.[9]  Haagensen has not directed this Court to the
place in the record where he objected in the trial court to the error.  

            As
a general rule, in order to preserve a complaint for review on appeal, the
claimed error must have been presented in the trial court, thereby providing
the trial court the opportunity to correct any error during the course of the
trial.  See Tex. R. App. P.
33.1(a).  The Texas Court of Criminal
Appeals has held “our system may be thought to contain rules of three distinct
kinds:  (1) absolute requirements and
prohibitions; (2) rights of litigants which must be implemented by the system
unless expressly waived; and (3) rights of litigants which are to be
implemented upon request.”  Marin v. State, 851 S.W.2d 275, 279
(Tex. Crim. App. 1993), modified in part
by Cain v. State, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997); see Saldano v. State, 70 S.W.3d 873, 887–88
(Tex. Crim. App. 2002).

            Haagensen
has not presented any argument or authority that the error complained of is
absolute error or waivable only error. 
The Beaumont Court of Appeals has held the error complained of—an
incorrect cause number—can be forfeited if not objected to.  See
Metcalfe v. State, No. 09-08-00256-CR, 2009 Tex. App. LEXIS 6720, at *4–5
(Tex. App.—Beaumont Aug. 26, 2009, pet. ref’d) (mem. op., not designated
for publication) (failure to object to incorrect cause number forfeited error).[10]  We agree with the Beaumont court.  By failing to object to the error in the
trial court, any error has been forfeited. 
Nothing is preserved for appellate review.  We overrule Haagensen’s fifth point of error.

Conclusion

            The evidence is sufficient to
support the jury’s finding that the offense occurred in a drug-free zone.  We conclude the record does not establish
that Haagensen received ineffective assistance of counsel.  Any error in the cause number contained in
the verdict form has not been preserved for appellate review.  We affirm. 


 

 

            

                                                                        Bailey
C. Moseley

                                                                        Justice

 

 

DISSENTING OPINION

            The
Legislature has determined that the penalty for some drug-related offenses are
enhanced if the offense occurs in a “drug-free zone.”  Tex.
Health & Safety Code Ann. § 481.134 (Vernon 2010).  To determine the location of a “drug-free
zone,” it is necessary to examine the specific definitions of the terms as
provided by the Legislature.  One
category involves offenses that occur near institutions of higher learning,
public or private youth centers, playgrounds or public swimming pools, and
video arcade facilities.  Tex. Health & Safety Code Ann. §
481.134(b)(1)–(2).  These violations
increase the punishment range for state jail felony offenses, making them
punishable as third degree felonies. 
Another category involves higher level felonies which occur within 1,000
feet of a school or public or private playground or on a school bus.  The penalty for those offenses is enhanced by
increasing the minimum punishment by five years and by doubling the maximum
fine.  Tex.
Health & Safety Code Ann. § 481.134(c).  The statute provides specific definitions of
“Institution of higher learning,” “Playground,” “Video arcade facility,” and “Youth
center.”  See Tex. Health & Safety
Code Ann. § 481.134(a)(2)–(3), (6)–(7). 


            The
category that the State alleged applied to this case is found in Section
481.134(d).  In those instances, state
jail felony offenses are punishable as third degree felonies if the offense
occurs:  (1) in, on, or within 1,000 feet
of any real property that is owned, rented, or leased to a school.  “School” is defined in the same statute:  (5) “School” means a “private or public
elementary or secondary school or a day-care center, as defined by Section
42.002, Human Resources Code.”  Tex. Health & Safety Code Ann. §
481.134(a)(5).  The indictment alleged
the offense occurred “within 1000 feet of a school, to-wit:  Little Ark Preschool, Paris, Lamar County,
Texas.”  The State made no attempt to
prove that Little Ark Learning Center was a private or public elementary or
secondary school and relied entirely on the alternative definition of “School”
as including a day-care center.  

            Stated
plainly, the State did not prove Little Ark Learning Center met all the
requirements for a day-care center.  A “‘Day-care
center’ means a child-care facility . . . .”  Tex. Hum.
Res. Code Ann. § 42.002(7) (Vernon Supp. 2010).  In turn, a “‘Child-care facility’ means a
facility licensed, certified, or registered by the department . . . .”  Tex.
Hum. Res. Code Ann. § 42.002(3). 
There was no proof that this facility was licensed, certified, or
registered.  

            I
will be the first to acknowledge that the requirements for this proof are
detailed and particularized.  See Jones
v. State, 300 S.W.3d 93, 99 (Tex. App.—Texarkana 2009, no pet.) (jury
finding drug offense occurred within 1,000 feet of playground, as defined by
law, did not constitute determination offense occurred within drug-free zone
under statute applicable at relevant time). 
For whatever reason, the Legislature only intended to include day-care
facilities licensed by the State agency charged with overseeing the
centers.  But these specific definitions
and restrictions were mandated by the Legislature, and we cannot discard the
necessity for that requisite proof.  The
majority opinion finds that most of the evidence needed was provided (Little
Ark Learning Center served more than twelve children under age fourteen for
less than twenty-four hours a day) and approves the failure to produce evidence
that the facility was licensed with the observation that it is unlikely the
church would operate without a license. 
It very well may be true that the day-care center is properly licensed,
but we have no evidence of that and we cannot substitute our suppositions and
speculation for evidence.  Further, the
majority opinion shifts the burden of proof by stating, “Absent testimony to
the contrary, we will not assume that the First United Methodist Church was
illegally operating the child care center . . . .”  The implication is that Haagensen must
produce evidence that the center is not licensed; otherwise, the Court presumes
it is.  

            I
agree with the majority opinion that the State is required to prove the center
was licensed, certified, or registered; since no such evidence is in the
record, the State has failed to meet its burden of proof.  

            I respectfully dissent. 

 

            

                                                                        Jack
Carter

                                                                        Justice

 

Date Submitted:          May 25, 2011

Date Decided:             June 10, 2011

 

Publish











[1]Drugs
were found in other bedrooms not used by Haagensen.





[2]Haagensen
argues the evidence is legally and factually insufficient.  In the Brooks
v. State plurality opinion, the Texas Court of Criminal Appeals found “no
meaningful distinction” between the legal sufficiency standard and factual
sufficiency standard.  Brooks v. State, 323 S.W.3d 893, 902
(Tex. Crim. App. 2010) (plurality decision). 
A plurality of the Texas Court of Criminal Appeals abolished the factual
sufficiency review.  Id.  Since the Texas Court of
Criminal Appeals has abolished factual sufficiency review, we need not address
Haagensen’s challenge to the factual sufficiency of the evidence.





[3]Testimony
by the child-care director of the facility indicates that the facility is
actually called the Little Ark Learning Center, and we will refer to it that
way.





[4]The
State argues, “The name of the premises alone may be sufficient to raise a
presumption that it is a day-care center that was ‘licensed, certified or
registered by the Department.’  Accord Young, 14 S.W.3d at 754.”  We believe Young is distinguishable from this case.  In Young,
the Texas Court of Criminal Appeals stated, “[T]he name of the premises alone
may be sufficient to raise a presumption that it is a private or public
elementary or secondary school.”  Young, 14 S.W.3d at 754 (noting State
also introduced maps of drug-free zones). 
Young did not involve a
day-care center.  Under the Texas Health
and Safety Code, all private and public elementary and secondary schools create
drug-free zones.  See Tex. Health & Safety
Code Ann. § 481.134.  





[5]The
map used by Foreman was not introduced into evidence.  There is also no evidence the map has been
approved by the municipality.  See Tex.
Health & Safety Code Ann. § 481.135 (Vernon 2010) (drug-free-zone
map approved by municipality is prima facie evidence).  We note that the Texas Court of Criminal
Appeals has held a map may be “probative proof of the drug-free zone boundaries”
even if there is no evidence the map has been approved.  Young,
14 S.W.3d at 754.





[6]Foreman
testified he based his measurements on a map he obtained at city hall from the
city engineer and by using Google Earth. 
We note that the Texas Health and Safety Code provides a map produced by
a city engineer is admissible and prima facie evidence of drug-free zones if
approved by the municipality.  Tex. Health & Safety Code Ann. § 481.135.  No objection was made concerning the
admissibility of Foreman’s testimony.





[7]Haagensen
does not provide any separate argument or authority explaining how the
protections offered by the Texas Constitution differ from the protections
guaranteed by the United States Constitution.  Likewise, Haagensen does not argue that the
Texas Constitution sets out a different or higher standard than the federal Constitution.
 Consequently, we review his claims under
the federal standard.  See Moore v. State, 935 S.W.2d 124, 128
(Tex. Crim. App. 1996).





[8]We
note the confidential informant admitted he was on community supervision at the
time of the offense and had four convictions, including two felony convictions
for burglary of a habitation.  

 





[9]Haagensen
alleges on appeal that this cause number concerned another charge pending
against him.





[10]Although
the unpublished case has no precedential value, we may take guidance from it
“as an aid in developing reasoning that may be employed.”  Carrillo
v. State, 98 S.W.3d 789, 794 (Tex. App.––Amarillo 2003, pet. ref’d).